**Sammy TURNER, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 30, 1959.

Joseph K. Beasley, Harlan, for appellant.

Jo M. Ferguson, Atty. Gen., Edward L. Fossett, Asst. Atty. Gen., for appellee.

MONTGOMERY, Chief Justice.

Sammy Turner was convicted of maliciously burning a building other than a dwelling and sentenced to two years' confinement in the state reformatory. KRS 433.020. On appeal, he urges that: (1) The evidence, being circumstantial, is not sufficient to sustain a conviction; and (2) the court failed to give the whole law of the case.

Between 10:30 and 11 p. m. on March 2, 1958, the Reverend Robert Lockhart was in the study of his residence at Evarts. His attention was attracted by a dog bark. On looking out the window, he saw a flash and heard a muffled explosion. The office of Dr. W. H. Stepchuck was on fire, both inside and outside the building. After calling the fire department, the minister and his wife crossed the alley to the office and attempted to extinguish the flames.

Lockhart found a window broken. Fresh blood was "smeared all over the window and all over the window sill and on the wall and on the ground." The glass of the window was broken in an irregular or jagged pattern. Some of the glass remained in the window and some was found on the ground.

The testimony of Russell McLain was substantially the same.

By various witnesses, including the chief of police, the fire chief, and a deputy sheriff,

none of whose testimony was impeached, it was shown that an immediate investigation was conducted. A bottle containing some gasoline was found inside the building about four feet from the window. A trail of blood was found leading from the window down the alley and down the street. There was no blood on the asphalt surface of the street, but the trail was found on the opposite side and led to appellant's home. There was fresh blood on the porch, bloody trousers were found on the floor of the bedroom, and appellant was found in bed with the covers pulled up over him. His hand was bleeding and his clothing was bloody.

Appellant was arrested and taken to the doctor's office for treatment. There were several lacerations on the back of his hand which were bleeding quite freely. Five or six stitches were taken to suture the cut.

Approximately two months after the fire, appellant was arrested for being drunk. As he was being returned to Evarts, the chief of police testified, appellant voluntarily said: "The next time I set fire to that office, I will make sure Stepchuck is in it, kill all you officers, and I will leave a trail that will be easy to follow." The testimony was corroborated by a deputy sheriff, who also said that appellant had made a similar statement thirty or forty minutes after the fire.

Dr. Stepchuck testified that he had attended professionally the family of appellant and had delivered both of his children. He assigned his unsuccessful attempts to collect a bill for the last delivery as the only reason for appellant to have had any ill will toward him. There was evidence that appellant was not intoxicated that evening.

Appellant denied setting the fire or having any grievance toward the doctor. He said he had drunk "two or three half pints of gin and some beer" before an officer took him home from "The Blistering Cat," a restaurant. He then returned to town to recover a half pint of whiskey, which he also drank. After appellant had engaged in a fight, some friends took him home.

Their testimony was that appellant's hand was cut and wrapped in a rag as they accompanied him from "Peanut" Fields' restaurant down Snuff Street to his home. They testified to his loss of blood as they were walking and the presence of blood on his porch. His condition was described as "drunk, couldn't hardly stand up." Appellant claimed that he had been so drunk he did not know whether he had cut his hand in the fight or by knocking the glass out of a car window.

By appropriate motions, the appellant questioned the sufficiency of the evidence at the close of the Commonwealth's testimony and at the close of all the testimony, and properly preserved his objections to the adverse rulings in his motion for a new trial. He now argues that since the evidence for the prosecution is circumstantial, it is not sufficient to sustain the conviction. He relies on Davidson v. Commonwealth, 252 Ky. 354, 67 S.W.2d 486; Hays v. Commonwealth, 270 Ky. 561, 110 S.W.2d 279; and Shepherd v. Commonwealth, 289 Ky. 353, 158 S.W.2d 643. In each of the cases cited, the evidence was held to be insufficient.

The principles governing are discussed in the cases relied on by appellant. Circumstantial evidence alone is sufficient to sustain a conviction. Bolen v. Commonwealth, 303 Ky. 611, 198 S.W.2d 309; Hibbard v. Commonwealth, Ky., 291 S.W.2d 574. Circumstantial evidence which creates only a suspicion is insufficient to establish guilt. Alexander v. Commonwealth, Ky., 277 S.W.2d 17. The circumstances must be so unequivocal and incriminating as to exclude every reasonable hypothesis of innocence, and circumstantial evidence as reasonably consistent with innocence as guilt is insufficient to sustain a conviction. Lorman v. Commonwealth, Ky., 269 S.W. 2d 243; Powell v. Commonwealth, Ky., 282 S.W.2d 340. Such evidence must go beyond mere suspicion and conjecture. Commonwealth v. Sloan, 310 Ky. 57, 219 S.W. 2d 966; Pennington v. Commonwealth, Ky., 262 S.W.2d 689. When the evidence intro-

duced by the Commonwealth is examined in the light of these principles, it is readily seen that it points unerringly to the guilt of the accused. Kinder v. Commonwealth, Ky., 279 S.W.2d 782. The evidence for the prosecution was sufficient to justify the court in overruling the motion for a directed verdict made at the close of the Commonwealth's testimony.

 Inconsistent as the proof for appellant may have been with the Commonwealth's proof, the innocence or guilt of the accused became a question for the jury. The jury determines the weight and credibility of the testimony of the witnesses and may accept the testimony of one set of witnesses as against the testimony of others. Mills v. Commonwealth, 305 Ky. 44, 202 S.W.2d 1005; Jones v. Commonwealth, 305 Ky. 264, 203 S.W.2d 72; Bolin v. Commonwealth, 311 Ky. 143, 223 S.W.2d 724; Jones v. Commonwealth, 313 Ky. 827, 233 S.W.2d 1007; and Bowling v. Commonwealth, Ky., 318 S.W.2d 53. In this case, the jury chose to believe the witnesses for the prosecution and there is sufficient evidence to sustain the verdict of conviction.

The objection to the instructions is directed to the use of the word "feloniously" instead of "willfully" as contained in the statute. KRS 433.020. Instruction No. 1 contained the phrase "maliciously and feloniously" instead of "maliciously and willfully." The instruction followed Stanley's Instructions to Juries, Volume 3, Section 804, page 49. Instructions No. 2A and No. 3 defined "maliciously" and "feloniously," respectively. The latter was defined as "proceeding from an evil heart or purpose, done with the deliberate intention to commit a crime."

■ Instructions are sufficient if when read together and considered as a whole they submit the law applicable to the facts in a form capable of being clearly and easily understood. Voils v. Commonwealth, 229 Ky. 305, 17 S.W.2d 238. "Feloniously" was correctly defined. Combs v. Common-

wealth, 298 Ky. 481, 183 S.W.2d 486. The word "willfully" means "intentionally, not accidentally or involuntarily," and done according to a purpose. The phrase "with the deliberate intention" used in the definition of "feloniously" embraced the same idea embodied in the word "willfully," and the failure to include "willfully" was adequately remedied by the use of the word "feloniously." The cases relied on by appellant dealing with the word "malice" are not in point.

Judgment affirmed.